**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

SIDNEY RABINOWITZ, M.D.,

    Plaintiff,

v.

CIGNA HEALTH AND LIFE INSURANCE COMPANY,

    Defendant.

Case No. 2:24-cv-9492 (BRM) (CF)

**OPINION**

**MARTINOTTI, DISTRICT JUDGE**

    Before the Court is Defendant Cigna Health & Life Insurance Co.'s ("Defendant") Motion to Dismiss (ECF No. 27) the Second Amended Complaint (ECF No. 23) pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff Sidney Rabinowitz, M.D. ("Dr. Rabinowitz") filed an opposition (ECF No. 35), and Defendant filed a reply (ECF No. 37). Having reviewed and considered the submissions filed in connection with the motion and having declined to hold oral argument pursuant to Federal Rule of Civil Rule 78(b), for the reasons set forth below and for good cause shown, Defendant's Motion to Dismiss is **DENIED**.

I.   **BACKGROUND**

  A.   **Factual Background**

For purposes of the motion to dismiss, the Court accepts the factual allegations in the Second Amended Complaint as true and draws all inferences in the light most favorable to Dr. Rabinowitz. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). The Court also considers any "document integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citation omitted).

Defendant is an insurance provider engaged in providing and administering health insurance "plans or polices in the State of New Jersey." (ECF No. 23 ¶¶ 2, 8.) At all relevant times herein, patient T.V. (the "Patient") was a beneficiary of an insurance plan provided and administered by Defendant (the "Plan").[1] (*Id.* ¶ 8.) Dr. Rabinowitz is an out-of-network medical provider "specializing in plastic and reconstructive surgery." (*Id.* ¶¶ 1, 5, 9.)

On September 9, 2021, a representative on behalf of Dr. Rabinowitz contacted Defendant requesting both pre-authorization and a "gap exception"[2] to perform a bilateral breast reduction

---

[1] Defendant attaches a "Summary Plan Description" of the subject Plan as an exhibit to its motion to dismiss. (*See generally* ECF No. 27, Ex. A.) As the Court has repeatedly held a health benefit plan is not a document integral to a promissory estoppel claim, the Court does not take notice of the "Summary Plan Description." S*ee Plastic Surgery Ctr., P.A. v. Cigna Health & Life Ins. Co.*, Civ. A. No. 24-10217, 2025 WL 1874886, at *2 n.2 (D.N.J. July 8, 2025) (citing *Ass'n of N.J. Chiropractors, Inc. v. Data ISight, Inc.*, Civ. A. No. 19-21973, 2022 WL 45141, at *3 (D.N.J. Jan. 5, 2022)).

[2] The term "gap exception" is an industry term, which is typically defined as an agreement to reimburse an "out-of-network" provider at an "in-network" rate for medically necessary procedures, *Peer Grp. for Plastic Surgery, PA v. United Healthcare Servs., Inc.*, Civ. A. No. 23-2073, 2024 WL 1328134, at *2 (D.N.J. Mar. 28, 2024); *see also Murray v. United Healthcare Servs., Inc.*, Civ. A. No. 23-2073, 2024 WL 4986725, at *1 (D.N.J. Dec. 5, 2024), which Defendant attests (*see* ECF No. 27-1 at 9). Dr. Rabinowitz contests this definition claiming a "gap exception" merely "cover[s] out-of-network medical treatment in a manner that exposes its member to no greater cost-sharing than if the member underwent the subject treatment with an in-network provider." (ECF No. 23, ¶ 13.) Dr. Rabinowitz claims an agreement to a "gap exception" does not

surgery on the Patient as no in-network medical providers were available to perform same. (*See id.* ¶¶ 6, 17–19.) On September 20, 2021, Medical Principal Patricia J. Stephenson, M.D., contacted Dr. Rabinowitz via telephone on behalf of Defendant, advising the surgery had been determined medically necessary under a peer-to-peer review. (*See id.* ¶ 21.) During the telephone call, Dr. Stephenson authorized both the surgery and the gap exception under authorization number OP095375624.[3] (*See id.* ¶ 21.) A written confirmation of the authorization was faxed to Dr. Rabinowitz on September 21, 2021. (*See id.* ¶ 22; *accord* ECF No. 27, Ex. B.)

On September 24, 2021, Dr. Rabinowitz performed the bilateral breast reduction surgery with the assistance of Dr. William K. Boss. (*Id.* ¶ 6.) Both Dr. Rabinowitz and Dr. Boss subsequently submitted claim forms to Defendant requesting a total payment of $98,130.00 each. (*Id.* ¶ 29.) In response, Defendant issued payment totaling $1,372.50 to Dr. Rabinowitz and $593.54 to Dr. Boss. (*Id.* ¶ 30; *see also* ECF No. 23, Ex. C.) Between December 2021 and November 2022, both Dr. Rabinowitz and Dr. Boss submitted multiple internal appeals without success. (*Id.* ¶ 32.) Defendant has not issued any additional payment to either Dr. Rabinowitz or Dr. Boss. (*Id.* ¶ 33.)

---

pertain to an agreed upon rate of reimbursement between the insurance provider and the out-of-network provider. (*Id.*, ¶¶ 14, 16.)

[3] Although Defendant initially concedes it granted Dr. Rabinowitz a gap exception permitting Dr. Rabinowitz to conduct the medically necessary procedure "at the in-network rate" in support of its argument the cause of action is barred under Section 514 (*see* ECF No. 27-1 at 4, 9, 11), Defendant subsequently denies granting same in support of its argument the Second Amended Complaint fails to state a claim (*see id.* at 16). Viewing the allegations in the Second Amended Complaint in the light most favorable to Dr. Rabinowitz and granting him all reasonable inferences, the Court finds Defendant did in fact grant Dr. Rabinowitz a gap exception for purposes of deciding the present motion.

### B. Procedural History

On August 23, 2024, Dr. Rabinowitz and Dr. Boss filed a Complaint against Defendant asserting two causes of action—promissory estoppel and unjust enrichment—in the New Jersey Superior Court (ECF No. 1-1 at 2–9), which Dr. Rabinowitz and Dr. Boss subsequently amended to withdraw the unjust enrichment claim (*id.* at 30–36). On September 27, 2024, Defendant removed the matter to this Court under both federal question and diversity jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1332. (ECF No. 1.)

On March 7, 2025, Defendant filed a motion to dismiss the Amended Complaint. (ECF No. 16; *see also* ECF No. 17.) Defendant, however, subsequently withdrew the motion to allow Dr. Rabinowitz and Dr. Boss to file an amended pleading removing Dr. Boss as a plaintiff. (ECF No. 21; ECF No. 22.) On April 11, 2025, Dr. Rabinowitz filed the Second Amended Complaint removing Dr. Boss as a plaintiff. (ECF No. 23.)

On May 28, 2025, Defendant filed a motion to dismiss the Second Amended Complaint. (ECF No. 27.) Dr. Rabinowitz filed an opposition on August 25, 2025 (ECF No. 35); and Defendant filed a reply on September 12, 2025 (ECF No. 37).

## II. LEGAL STANDARD

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the non-moving party]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of

4

action will not do." *Id.* (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). This "plausibility standard" requires the complaint to allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (citing *Twombly*, 550 U.S. at 556). "[D]etailed factual allegations" are not required, but "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" must be pleaded; it must include "factual enhancement" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citations omitted). In assessing plausibility, the court may not consider any "[f]actual claims and assertions raised by a defendant." *Doe v. Princeton Univ.*, 30 F.4th 335, 345 (3d Cir. 2022).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). Indeed, after *Iqbal*, conclusory or "bare-bones" allegations will no longer survive a motion to dismiss:

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible, "allow[ing] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Supreme Court's ruling in *Iqbal* emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible. *See id.* at 670.

While, as a general rule, the court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held that "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999).

### III. DECISION

Defendant asserts the Second Amended Complaint must be dismissed with prejudice as the promissory estoppel cause of action is expressly preempted under Section 514 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*, as the claim "relates to" an ERISA plan. (ECF No. 27-1 at 7–14; *see also* ECF No. 36 at 2–8.) Specifically, Defendant argues the promissory estoppel claim substantively "relates to" an ERISA plan, as Defendant's obligation to review Dr. Rabinowitz's request for authorization and a gap exception arose from its obligations under the Plan, which Defendant claims is an ERISA plan. (ECF No. 27-1 at 2.) Furthermore, Defendant argues the pre-authorization letter to the Patient specifically "references" the Plan and states pre-authorization is not a guarantee of payment, a copy of which

6

was allegedly mailed to Dr. Rabinowitz prior to the medical procedure.[4] (*Id.* at 9 (citing ECF No. 27, Ex. B).) Defendant also asserts the promissory estoppel claim fails to state a claim as the Second Amended Complaint does not allege Defendant made a "clear and definite" promise to reimburse Dr. Rabinowitz a rate certain. (*Id.* at 16–18; *see also* ECF No. 36 at 8–12.)

In response, Dr. Rabinowitz argues the promissory estoppel cause of action is not expressly preempted under Section 514 as the claim does not "relate to" the Plan but rather "arises independently from the Plan." (*See* ECF No. 35 at 8–14.) Dr. Rabinowitz also argues the promissory estoppel claim sufficiently states a claim as a pre-authorization may constitute as a "clear and definite" promise to reimburse a medical provider at either a pre-negotiated rate, or at the out-of-network rate.[5] (*Id.* at 14–18.)

---

[4] Defendant attaches a copy of the pre-authorization letter as an exhibit to its motion to dismiss. (*See generally* ECF No. 27, Ex. B.) In response, Dr. Rabinowitz argues the Court should not consider the pre-authorization letter as the letter is neither annexed to nor referenced in the Second Amended Complaint and disputes receipt of same. (ECF No. 35 at 7, 16–17 (citing *Premier Orthopaedic Assocs. of S. NJ, LLC v. Anthem Blue Cross Blue Shield*, 675 F. Supp. 3d 487, 492 (D.N.J. 2023) (declining to consider a pre-authorization letter where the pleading neither annexed nor referenced the latter and the plaintiff disputed the authenticity of the letter)).) In response, Defendant argues the letter was in fact referenced in the Second Amended Complaint. (*See* ECF No. 36 at 11 (citing ECF No. 23 ¶ 26).) The Court finds the pre-authorization letter is a document integral to the Second Amended Complaint and, therefore, the Court will consider the letter in support of its decision. S*ee Burlington Coat Factory*, 114 F.3d at 1426; *see also Plastic Surgery Ctr., P.A. v. Cigna Health & Life Ins. Co.*, Civ. A. No. 24-10217, 2025 WL 1874886, at *2 n.2 (D.N.J. July 8, 2025); *Peer Grp.*, Civ. A. No. 23-2073, 2024 WL 1328134, at *2; *Advanced Orthopedics & Sports Med. Inst., P.C. v. Oxford Health Ins., Inc.*, Civ. A. No. 21-17221, 2022 WL 1718052, at *3 (D.N.J. May 27, 2022).

[5] Dr. Rabinowitz also argues the promissory estoppel cause of action should not be expressly preempted under Section 514 as the Plan includes an anti-assignment clause. (*See* ECF No. 35 at 6–8.) Although both Dr. Rabinowitz and Defendant note an anti-assignment clause precludes complete preemption under Section 502 (*see* ECF No. 35 at 12; ECF No. 36 at 12), Dr. Rabinowitz argues this Court should extend the principle and hold an anti-assignment clause also precludes express preemption under Section 514 (*see* ECF No. 35 at 6–8). In support of same, Dr. Rabinowitz relies on an oral opinion entered in the United States District Court of the Southern District of New York. (*See id.* at 8.) The Third Circuit, however, has provided distinct and separate frameworks to determine whether a State law claim is completely preempted under Section 502 or expressly

7

### A. Express Preemptions Under Section 514

ERISA was enacted with the goal "to promote the interests of employees and their beneficiaries in employee benefit plans by ensuring benefit plans [are] well managed and [will] not leave plan participants short-changed." *Plastic Surgery Ctr., P.A. v. Aetna Life Ins. Co.* (*Aetna Life Ins.*), 967 F.3d 218, 225 (3d Cir. 2020) (internal quotation marks omitted) (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90 (1983)). To achieve this goal, ERISA sets forth various rules and requirements to protect "participants" and "beneficiaries," and to impose responsibilities on "fiduciaries."[6] *See id.* at 225–26. To provide uniform enforcement of these rules and requirements,

---

preempted under Section 514. The Third Circuit recently reviewed and re-affirmed the appropriate framework to determine whether a State law claim is expressly preempted under Section 514, which does not require consideration of whether the relevant ERISA plan includes an anti-assignment clause. *See Plastic Surgery Ctr., P.A. v. Aetna Life Ins. Co.*, 967 F.3d 218, 225 (3d Cir. 2020); *but see N.J. Carpenters & the Trs. Thereof v. Tishman Constr. Corp. of N.J.*, 760 F.3d 297, 303 (3d Cir. 2014) (considering under the framework for complete preemption under Section 502 whether an ERISA plan includes an anti-assignment clause). As the Third Circuit failed to extend the principle and hold an anti-assignment clause also precludes express preemption under Section 514, this Court declines to do so.

[6] ERISA defines the terms "participants", "beneficiaries", and "fiduciaries" as follows. The term "participant" is defined as:

> [A]ny employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit.

29 U.S.C. § 1002(7). The term "beneficiary" is defined as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8). The term "fiduciary" includes an individual of an ERISA plan that "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets", "renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so", or "has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A).

"and to guarantee that the cost of compliance would not be prohibitive," ERISA also imposes two complementary statutory provisions by which to preempt a State law claim—complete preemption under Section 502 and express preemption under Section 514. *Id.* at 226. As neither party claims the promissory estoppel claim is completely preempted under Section 502, the Court does not review same.

Section 514 imposes "a broad express preemption provision, which supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." *Id.* (alteration in original) (internal quotation marks omitted) (quoting 29 U.S.C. § 1144(a)). The scope of "State laws" that may "relate to" an ERISA plan is expansive, including not only State laws, rules, and regulations "but also common law causes of action." *Id.* (citing *Menkes v. Prudential Ins. Co. of Am.*, 762 F.3d 285, 294 (3d Cir. 2014)). To determine whether a State law claim is preempted by ERISA, the Supreme Court has recognized a "State law" "relates to" an ERISA plan if the claim either "references to" or "has a connection with" the plan. *Shaw*, 463 U.S. at 90; *accord Aetna Life Ins.*, 967 F.3d at 226.

The Court finds the promissory estoppel claim is not preempted under Section 514. As recently affirmed by the Third Circuit, a well-pled promissory estoppel claim neither "references to" nor "connects with" an ERISA plan. *See Aetna Life Ins.*, 967 F.3d at 229–34. As noted by the Third Circuit:

> [A]t the motion to dismiss stage, we must view the allegations in the light most favorable to the [plaintiff] and draw all reasonable inferences in the [plaintiff]'s favor. When we do so, the claims as pleaded are not for benefits due under the plans. Nor are the claims otherwise impermissibly predicated on the plan or plan administration. Because, as alleged, it is [the defendant]'s oral offers or oral promises (as the case may be) rather than the terms of the plan that define the scope of [the defendant]'s duty . . . .

*Id.* at 233 (citing *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 139–40 (1990)).

9

Here, the promissory estoppel claims are as follows: the Patient was a participant/beneficiary of the Plan (ECF No. 23 ¶ 8); Dr. Rabinowitz, as an out-of-network provider, requested authority to perform a medically necessary surgery (*id.* ¶¶ 9–12); and Defendant orally authorized the surgery and agreed to reimburse Dr. Rabinowitz either at the billed rate or, "alternatively[,] at an agreed upon rate" (*id.* ¶¶ 13–16, 27). Viewing the allegations in the light most favorable to Dr. Rabinowitz, the promissory estoppel claim neither "references to" nor "connects with" the Plan. *See Aetna Life Ins.*, 967 F.3d at 233. Therefore, the promissory estoppel claim is not preempted under Section 514. *See e.g., Plastic Surgery Ctr., P.A. v. UnitedHealthcare Ins. Co. ("UnitedHealthcare Ins. Co.")*, Civ. A. No. 24-8584, 2025 WL 1531143, at *3–5 (D.N.J. May 29, 2025); *Samra Plastic & Reconstructive Surgery v. Cigna Health & Life Ins. Co.*, Civ. A. No. 23-22521, 2024 WL 3444273, at *4–5 (D.N.J. July 17, 2024) (finding Section 514 does not preempt a promissory estoppel claim).

Based on the foregoing, the Court finds the Second Amended Complaint is not expressly preempted under Section 514.

### B. Failure to State a Claim under Rule 12(b)(6)

Under New Jersey law, a promissory estoppel claim must satisfy four elements: "(1) a clear and definite promise; (2) made with the expectation that the promisee will rely on it; (3) reasonable reliance; and (4) definite and substantial detriment." *Cotter v. Newark Hous. Auth.*, 422 F. App'x 95, 99 (3d Cir. 2011) (quoting *Toll Bros. v. Bd. of Chosen Freeholders of Burlington*, 944 A.2d 1, 19 (N.J. 2008)). An indefinite promise or a promise subject to change is neither "clear" nor "definite" and, as such, "cannot give rise to a claim for promissory estoppel." *Del Sontro v. Cendant Corp.*, 223 F. Supp. 2d 563, 574–75 (D.N.J. 2002).

The Court finds the Second Amended Complaint alleges a cognizable promissory estoppel claim.[7] As noted above, the Second Amended Complaint alleges Defendant orally pre-authorized the medically necessary procedure on September 20, 2021 (ECF No. 23 ¶ 21), which Dr. Rabinowitz claims constituted an oral agreement for reimbursement at either the out-of-network billed rate or, "alternatively[,] at an agreed upon rate" (*id.* ¶¶ 13–16, 27). For purposes of defeating a motion to dismiss for failure to state a claim, the Court has specifically held "a preauthorization can constitute or contain a clear and definite promise."[8] *Gotham City Orthopedics, LLC v. United Healthcare Ins. Co.*, Civ. A. No. 21-11313, 2022 WL 111061, at *6 (D.N.J. Jan. 12, 2022). Therefore, viewing the allegations of the Second Amended Complaint in the light most favorable to Dr. Rabinowitz, the Second Amended Complaint sufficiently alleges a "clear and definite" promise to reimburse Dr. Rabinowitz at either the out-of-network billed rate or, alternatively, at an agreed-upon rate of compensation.

---

[7] Defendant notes the similarity of the circumstances between the present matter and those in *Peer Group for Plastic Surgery, PA v. United Healthcare Services, Inc.*, wherein the Court held the plaintiff had failed to allege a cognizable promissory estoppel claim. Civ. A. No. 23-2073, 2024 WL 1328134, (D.N.J. Mar. 28, 2024). (*See generally* ECF Nos. 10–12.) The Court, however, finds the circumstances between the two matters to be distinguishable.

[8] As noted by the parties (*compare* ECF No. 27-1 at 13–14, *with* ECF No. 35 at 13–14, 17), there exists conflicting caselaw in this District as to whether a promissory estoppel claim may be dismissed for failure to state a claim pursuant to express preemption under Section 514, *see, e.g.*, *UnitedHealthcare Ins. Co.*, 2025 WL 1531143, at *2–5 (holding a promissory estoppel claim cannot be barred under Section 514); *but see, e.g.*, *Peer Grp.*, 2024 WL 1328134, at *5–8 (holding a promissory estoppel claim can be barred under Section 514), which the Court recognizes. The Court also recognizes there exists conflicting caselaw as to whether pre-authorization alone may constitute a clear and definite promise to allege a cognizable promissory estoppel claim. *Compare Gotham City Orthopedics*, 2022 WL 111061, at *6 (citing multiple cases in support of the proposition pre-authorization alone constitutes is a "clear and definite" promise to reimburse a medical provider at the "out-of-network" rate), *with E. Coast Spine*, 2023 WL 5769393, at *4 (citing multiple cases in support of the proposition pre-authorization alone does not constitute a "clear and definite" promise to reimburse a medical provider at the "out-of-network" rate).

11

Based on the foregoing, the Court finds the Second Amended Complaint states a cognizable promissory estoppel claim.

### IV.  CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss is **DENIED**. An appropriate order follows.

**Date: October 10, 2025**                                  */s/ Brian R. Martinotti*
                                                            **HON. BRIAN R. MARTINOTTI**
                                                            **UNITED STATES DISTRICT JUDGE**